## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

OCTAVIO D. VILLA,

     Plaintiff,

v.                                                                    No. 08-CV-476 WJ/RLP

MARTIN MARTINEZ, GREG MARTINEZ, DEAN
THATCHER, GREGORY GARCIA, JOAQUIN LEGARRETA,
Individually and In Their Official Capacity As Members of the
Las Cruces Police Department,

     Defendants.


## MEMORANDUM ORDER AND OPINION DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER comes before the Court on Plaintiff Octavio Villa's Motion for

Summary Judgment (Doc. 29).  Officers entered Plaintiff's property without a warrant and

detained him because they suspected he was involved in a hit-and-run automobile accident and

aggravated assault.  Plaintiff was released an hour later after the police determined that no crime

had been committed.  Plaintiff subsequently sued the officers for illegal entry to his property

without a warrant, wrongful detention, and excessive force.  The officers, in turn, asserted

qualified immunity.  Plaintiff then filed this Motion for Summary Judgment with regard to three

of the five defendants.

### BACKGROUND[1]

On April 8, 2007, Defendant Joaquin Legarreta was dispatched to the scene of a

_____

[1] Because Plaintiff has filed this Motion for Summary Judgment, the Court recites the
facts and reasonable inferences drawn from them in the light most favorable to the Defendants.
*Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000).

suspected hit-and-run vehicle accident.  After arriving, Officer Legarreta was told that the

victims' vehicle had been run off the road and "almost hit" by a green truck.  While no contact

had occurred between the two vehicles, Officer Legarreta suspected that the perpetrator had

committed aggravated assault with a vehicle.  He then radioed in a description of the missing

vehicle, noting that the vehicle had been involved in a hit-and-run or aggravated assault.  He also

informed the dispatcher that the victims believed Plaintiff was the driver of the green truck.

Minutes later, Detective Martin Martinez (who had responded to the radio call) arrived at

Plaintiff's trailer home and spotted a green truck parked in the driveway.  The home and front

yard were surrounded by a chain-link fence.  The home had been "flagged" as a problem

residence, meaning that police had been called to the residence on multiple occasions in the past.

Officer Martinez asked Plaintiff, who was outside installing a stereo in the truck, for permission

to enter the property.  Plaintiff refused permission and claimed that his dog would bite anyone

who attempted to enter.  Plaintiff's mother, who also lived at the residence, opened the trailer

window and asked the officer why he was there.  Officer Martinez explained that they wanted to

investigate whether the vehicle was involved in a hit-and-run or aggravated assault.  Mrs. Villa

then gave the officers permission to enter the property.[2]  Sometime during this exchange, Officer

Greg Martinez arrived on the scene.

The officers entered the property through a gate in the chain-link fence.  When Officer

Martin Martinez asked Plaintiff whether he had been driving his truck that morning, Plaintiff

responded "It's none of your business."  Officer Martinez walked over to the truck to see if

---

[2] Plaintiff disputes that Mrs. Villa gave the officers permission to enter the property and
notes that Officer Martinez's police report does not state that Mrs. Villa gave her consent.  For
the purposes of this summary judgment motion, however, this Court must view the facts in the
light most favorable to the Defendants.

anyone was inside.  After ascertaining that no one was inside, he photographed the truck, inspected the outside and found no signs of damage, and noted that the radiator was generating heat.  He then stood by the truck to ensure that no one tampered with it until the witnesses could identify it.

Meanwhile, Officer Greg Martinez and Officer Dean Thatcher (who had since arrived on the scene) attempted to question Plaintiff.  Plaintiff could not give the officers basic biographical information such as his name and date of birth.  Mrs. Villa informed the officers that Plaintiff had a mental disorder, but the officers believed that Plaintiff was attempting to obstruct the investigation through his evasive answers.  Plaintiff asserted that he had not driven the truck that morning, but Plaintiff's girlfriend told the officers that he had driven away in the truck for about five to ten minutes.  Plaintiff became agitated and started swearing at the officers, telling them they had no right to be on his property without a warrant.  Several neighbors heard the commotion and came outside their homes to see what was going on.  Although Plaintiff did not threaten any of the officers, he became verbally abusive and the police grew concerned for their safety.  They decided not to allow Plaintiff to go back inside his house in case he decided to get a weapon.  Ignoring the officers' instructions, Plaintiff attempted to reenter his home.  As he was walking up the stairs, Officer Thatcher performed an arm-bar maneuver and escorted him back down the stairs.  He then placed Plaintiff in handcuffs and put him in the back of a squad car, telling Plaintiff that he was being detained for further investigation.  According to Defendants, Plaintiff never complained about the handcuffs or any injury.  The officers planned to keep Plaintiff and the truck secure until the witnessess could be brought to the scene to identify both.

About an hour later, Officer Gregory Garcia arrived on the scene and ordered that Plaintiff be released.  After interviewing the rest of the witnesses, Officer Garcia had concluded

that no crime had been committed.  The record is unclear, but it appears that, at some point,

Officer Thatcher criminally cited Plaintiff for either resisting an officer or disorderly conduct.

Plaintiff then filed this suit against all five officers.

### STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with any affidavits, show that there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

FED. R. CIV. PRO. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).  The moving

party bears the initial burden of showing an absence of evidence to support the nonmoving

party's case.  If the moving party fails to carry its initial burden of production, the nonmoving

party has no obligation to produce anything.  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d

976, 979 (10th Cir. 2002).  Once that burden is met, however, the nonmoving party must put

forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest

on mere allegations or denials in his own pleadings.  *Anderson v. Liberty Lobby*, 477 U.S. 242,

256-57 (1986).  In order to avoid summary judgment, the nonmoving party must put forth

enough evidence that a reasonable jury could return a verdict in the nonmovant's favor.  *Id.* at

249.  A mere scintilla of evidence in the nonmovant's favor is not sufficient.  *Id.* at 252.

Furthermore, when the defendant asserts the affirmative defense of qualified immunity,

the analysis becomes more complicated.  The plaintiff bears a heavy two-fold burden to put

forward evidence showing (1) that the defendant violated plaintiff's constitutional rights, and (2)

the right at issue was clearly established at the time of the violation.  *Medina v. Cram*, 252 F.3d

1124, 1128 (10th Cir. 2001).  Courts have discretion to determine "which of the two prongs of

the qualified immunity analysis should be addressed first in light of the circumstances in the

particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).  If the plaintiff fails to

establish either part of the two-part inquiry, the court must grant the defendants qualified

immunity.  *Medina*, 252 F.3d at 1128.  If the plaintiff succeeds in carrying his two-fold burden

of production, the burden shifts back to the defendant and the analysis reverts to a traditional

summary judgment analysis.  *Id.*

## DISCUSSION

Although Plaintiff styles his motion as a motion for summary judgment, it is actually

only a *partial* motion for summary judgment.  He presents no evidence of culpability on the part

of Defendants Joaquin Legarreta and Gregory Garcia, who were not present during the allegedly

illegal entry or detention and did not participate in the allegedly excessive use of force.  In

addition, although he sued the officers in both their official and individual capacities, he presents

no evidence of municipal liability.  Despite the title of his motion, Plaintiff himself requests only

partial summary judgment in his conclusion.  Furthermore, Plaintiff did not object in his Reply

Brief to the Defendants' re-characterization of his motion as a partial summary judgment

motion.  Therefore, the Court will construe this motion as a motion for partial summary

judgment against Officers Martin Martinez, Greg Martinez and Dean Thatcher in their individual

capacities only.

## I.     Illegal Entry

The Court cannot grant Plaintiff's Motion for Summary Judgment with respect to the

illegal entry claim because there is a material issue of fact over whether Plaintiff's mother gave

the officers consent to enter the property.  While the Fourth Amendment generally prohibits

warrantless entry into a person's residence,[3] such entry is lawful if the police obtain the voluntary consent of a person who possesses common authority over the premises.  *United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004).  The Tenth Circuit has stated that "a third party has authority to consent to a search of property if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it."  *Id.* (quoting *United States v. Rith*, 164 F.3d 1323, 1329 (10th Cir. 1999)).  The officers assert—and Plaintiff does not dispute—that Mrs. Villa owned the trailer home and lived there with the Plaintiff. Under Tenth Circuit law, Mrs. Villa had full authority to consent to the officers' entry onto her property.

The only question at issue is whether she did, in fact, consent.  In his deposition, Officer Martinez stated that Mrs. Villa explicitly gave him permission to enter the yard and inspect the vehicle.  Defendants' Br., Ex. C at 30-32.  After he explained to Mrs. Villa that he suspected the vehicle was involved in a hit-and-run, he asked her if he could look at Plaintiff's truck. According to Officer Martinez, Mrs. Villa answered, "That's fine."  *Id.*  Plaintiff argues that this Court should give no credence to Officer Martinez's testimony because this exchange was not included in the officer's police report.  It is not the Court's job at this stage, however, to choose between competing versions of the facts.  That is the task of the fact-finder at trial.  Here, Officer

---

[3] The Defendants make an alternative argument that Plaintiff had no reasonable expectation of privacy in his front yard, even though it was surrounded by a chain link fence. The Tenth Circuit has not addressed, in any published decision, whether a front yard surrounded by fence constitutes "curtilage" protected by the Fourth Amendment.  *But see United States v. Larson*, 2003 WL 723961, *7 (10th Cir. 2003) (unpublished) (concluding that a front porch did not constitute part of the building's curtilage notwithstanding the presence of a chain link fence and that the officers entry onto the porch to knock on the door did not violate the Fourth Amendment).  Because there is already a material issue of fact over whether Mrs. Villa gave Officer Martinez consent to enter the property, the Court need not address Defendant's alternative argument.

Martinez's deposition testimony is sufficient to create a genuine dispute over a material issue of fact.  Therefore, the Court cannot grant Plaintiff summary judgment on this issue.

## II.       Illegal Detention or Arrest

Similarly, the Court cannot grant summary judgment to Plaintiff on the question of whether the Defendants unreasonably detained or illegally arrested Plaintiff.  Police may temporarily detain individuals suspected of criminal activity as long as the police can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the detention.  *Terry v. Ohio*, 392 U.S. 1, 21 (1968).  The scope of an investigative stop, known as a Terry stop, must be reasonably related to the circumstances which justified the interference in the first place.  *United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002).  Courts must use common sense and look at the totality of the circumstances to determine the appropriate scope of a Terry stop.  *Id.*  "If a police-citizen encounter exceeds the limits of a Terry stop, the detention becomes an arrest that must be supported by probable cause."  *Id.*  Here, Plaintiff argues that the investigative detention became an arrest because the officers detained Plaintiff while he was on his private property, because they placed him in handcuffs, and because they kept him the back of the squad car for about an hour.

First, and most persuasively, Plaintiff argues that his detention must be an arrest and not a Terry stop because Terry stops cannot occur at suspect's private residence.[4]  Plaintiff is correct that the vast majority of Terry stops occur in situations where the suspect has a reduced expectation of privacy, such as on a public street or in a vehicle.  On the other hand, the

---

[4] The entire encounter occurred in Defendant's front yard.  As noted above, *supra* n.3, it is unclear whether the Defendant's enclosed front yard should be considered "curtilage" entitled to the strongest protections of the Fourth Amendment.  For the purpose of this discussion, the Court will assume that it should.

suspect's expectation of privacy and the protective force of the Fourth Amendment are strongest when the suspect is within his home or within the curtilage of his home. *See United States v. Long*, 176 F.3d 1304, 1308 (10th Cir. 1999) ("Curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life."). The Tenth Circuit has expressed skepticism over the idea that a Terry stop can occur within a suspect's home. *See Harmon v. Pollock*, 586 F.3d 1254, 1262 (10th Cir. 2009) (noting that the twin rationales for an investigative detention are likely inapplicable to a Terry stop within the home). However, no court appears to have held that such a stop *cannot* occur, *see, e.g.*, *United States v. Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004) (declining to decide the purely legal question of whether police may conduct a Terry stop within one's home), and at least one court has held that Terry stops may occur in the home. In *United States v. Meadows*, the First Circuit rejected any bright-line rule and treated the residential setting as part of the totality of the circumstances in determining whether the police had reasonable suspicion for their investigative detention. 571 F.3d 131, 143 (1st Cir. 2009). In the absence of any controlling Tenth Circuit decision, I find the reasoning of the First Circuit persuasive, at least insofar as it concerns a Terry stop on an individual's front yard open to public view. I see no reason why police cannot effect a brief investigative detention on a suspect's private property, assuming they are already lawfully on the property and that the officers have reasonable suspicion to justify the detention. While it may often be more difficult for police to show that such a detention was reasonable, the possibility of a reasonable Terry stop on a suspect's property remains. In this case, therefore, the Terry stop did not automatically become an arrest merely because it took place in the suspect's front yard.

The Defendant goes on to argue that the police exceeded the justifiable scope of the detention by using handcuffs and forcing him to sit in the back of a squad car for about an hour.

The Tenth Circuit has held that a Terry stop does not become unreasonable just because police officers use handcuffs. *United States v. Neff*, 300 F.3d at 1220. *But see Manzanares v. Higdon*, 575 F.3d 1135, 1148 (10th Cir. 2009) (noting that the use of forceful techniques such as handcuffs generally exceeds the scope of an investigative detention). Use of handcuffs is permissible as long as they are necessary for officer protection. *Neff*, 300 F.3d at 1221. Here, the officers had reason to worry for their safety. Construing the facts in the light most favorable to the Defendant, Plaintiff had displayed hostility and anger toward the officers. He was verbally abusive (calling one officer a "fucking pussy"), evasive in answering questions, and refused to comply with the officers' instruction to come down the steps. While the officers had no evidence suggesting that Plaintiff had a weapon hidden inside the house and Plaintiff had not made any explicit threats against the officers, the officers asserted that, in their experience, such situations can turn violent very quickly. The officers claimed they were nervous about Plaintiff's behavior and determined that securing Plaintiff in handcuffs in the back of a squad car was an appropriate way to keep the situation under control. While the evidence at trial may show that the conduct of the officers was unreasonable, this Court cannot grant Plaintiff summary judgment at this stage in the proceedings.

Finally, Plaintiff argues that the hour-long detention was unreasonable under the circumstances. The Tenth Circuit has never put explicit time limits on a Terry stop; rather, the question of whether a detention was unreasonably long is determined by the totality of the circumstances. In one situation, the Tenth Circuit found that police reasonably held a suspect in handcuffs for 45 minutes. *See United States v. Shareef*, 100 F.3d 1491, 1507 (10th Cir. 1996). In another, the Tenth Circuit determined that holding a handcuffed suspect in the back of a squad car for three hours exceeded the bounds of an investigative detention and constituted an arrest.

9

*Manzanares*, 575 F.3d at 1148.  Here, the police kept the Plaintiff in the back of a squad car for about an hour while they waited for the investigating officer and witnesses to arrive.  An hour is a long time—especially in a situation like this where the Plaintiff was only suspected of a vehicular crime and the police had already secured the vehicle.  However, the officers believed Plaintiff had been involved in an aggravated assault, they had watched Plaintiff grow more and more agitated as they questioned him, and they had witnessed Plaintiff disobey their orders and attempt to reenter his home.  Viewing the facts in the light most favorable to the Defendants, the Defendants had some reason to fear for their safety.  Furthermore, the Defendants could not control when the investigating detective and witnesses arrived; it was not the fault of the Defendants that they did not arrive for an hour.  In sum, this Court cannot say with certainty at this point that the officers' decision to keep Plaintiff in the back of the squad car for an hour exceeded the reasonable scope of the detention.  This issue will be better resolved at trial.

## III.  Excessive Force

Finally, this Court must deny Plaintiff's summary judgment motion with respect to his excessive force claim.  Plaintiff's argument on this claim is cursory: he devotes only one sentence to it in his summary judgment motion and does not address this claim at all in his reply brief.  There is a material dispute of fact over whether Plaintiff complained that the handcuffs were too tight at the time of his detention.  Furthermore, while Plaintiff asserts that he "has lost most of the use of his arm and hand," he puts forward no competent summary judgment evidence of this fact.  Viewing the facts in the light most favorable to the Defendants, there is at least a material issue of fact over whether the officers used excessive force in applying the handcuffs to Plaintiff.

## CONCLUSION

For the reasons given above, I hereby DENY Plaintiff's Motion for Summary Judgment.

**SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE